Good morning, Your Honors. May it please the Court, Eric Lee on behalf of Selenia Gutierrez and Isaias Sanchez, and if I may request three minutes for rebuttal, please. Please, what's your clock? Will do. The political branch's plenary power to set the terms for admission to the United States has always been limited by the Constitution. When a visa denial implicates First Amendment interests, the Supreme Court has ensured limited judicial review, requiring the government show that its visa denial is facially legitimate and bona fide. The government has not met that test here because while consular officers may consider tattoos and other protected speech in the visa adjudication process, common tattoos alone, when acquired in the U.S. as protected speech by a non-citizen with substantial connections to this country, does not provide more than a mere suspicion of gang membership sufficient to satisfy the any other unlawful activity prong under 1182A3A2 Romanets. Remand in lieu of a merits decision would also be appropriate here for several reasons. First, the government has raised a new factual argument in its briefs before this Court asserting that the tattoos here were not the sole basis of the visa denial. That argument was not made below. We are here respectfully on a 12B6 motion. The District Court should consider that argument in the first instance. But also, the District Court really didn't consider this case from the prism of the First Amendment. It's understandable given that the Ninth Circuit's then applicable decision in Department of State against Munoz had come out only several months earlier. But this is a First Amendment case. Both of these appellants have a pathway to the facially legitimate and bonafide test. The District Court really didn't analyze it from that standpoint. In fact, it expressly reserved judgment on whether Mrs. Gutierrez could get to the facially legitimate and bonafide test through the First Amendment. This seems like an end run around the Supreme Court's Munoz decision. I understand you're saying Munoz was about due process and this is about First Amendment. But it does seem a very odd way to characterize this as a First Amendment case that a spouse has a First Amendment right to receive information from his or her spouse. I've never heard First Amendment characterized that way. But, Your Honor, that's the great thing about the Mandel test, is that the Court wanted to avoid exactly that type of problem where it had to balance the weight of different First Amendment interests. And the Court did say that the First Amendment does not protect only the articulate, the well-known, and the popular. That's at 768 of the Court's decision there. So here's what I think the basic difference, aside from the First Amendment and Fifth Amendment claims here is. At the end of the Court's opinion in Munoz, the Court explicitly says that the procedural due process is an odd vehicle for reaching the Mandel test. The Court certainly didn't overturn Mandel. The government doesn't appear to argue that it did because it can't make such an argument. But here we're not arguing that either of these appellants has an interest in somebody else's visa denial. That was the Court's main concern with the way that that case was brought. Here we don't have that issue because not only does Mrs. Gutierrez have an interest that triggers the facially legitimate and bona fide test, but also Mr. Sanchez acquired these tattoos while he was living in this country for 24 years. If I can interrupt, sorry. In Mandel, I mean, that was the core classic First Amendment, right? You have a height of Cold War, you have a Marxist professor, they invite him to speak in a debate, and the United States government says, no, we don't, you know, apparently because he had unpopular beliefs. Here it's about a tattoo. I mean, what will the limit be for First Amendment say if an American citizen, can an American citizen say my uncle should come here, he has a tattoo, I have a First Amendment right to receive information from my uncle? Would that extend to that situation as well? Probably not, Your Honor, because here the Court, the same week as it issued the Munoz decision, issued Missouri against Murthy. And there, Justice Barrett also wrote the opinion of the Court, and the Court was clear there that there has to be some sort of concrete connection between the individual and the First Amendment right to listen claim. We have that here. What if it's, you know, an uncle, you know, he was my father figure, he was basically my dad, he raised me, but his visa has been denied? I think that would be a much weaker case than this case, Your Honor. But again, with Murthy, plus the fact that this is exactly why the Court set the facially legitimate and bona fide test, is why there has to be some pathway here, because if there's not, then there's no pathway to challenge visa denials under the facially legitimate and bona fide test. That would be like if someone gave you a car and it didn't have any doors. They wouldn't have really given you a car. And the reason why the facially legitimate and bona fide test is not met here, Your Honor, is because based on these facts specifically, where there is no other indication of lawful activity, where these tattoos Mr. Sanchez acquired to express his personality, his sense of individualism, his love for his three boys, his love for his community of Los Angeles, his Catholic faith, without any other fact on the record, Your Honors, that test, the facially legitimate and bona fide test, cannot be met under these circumstances. The government argues that the visa denial contained additional reasons that the consular officer reviewed all evidence available, including the statements he made during the visa interview, the information provided by law enforcement, the immigration record, and all documents submitted, and argues that there's no requirement that they produce that evidence. What's your response to that? Yes, Your Honor. So all of those indications that were given by the Consular Information Unit track back to the tattoos. The officer in this case asked no questions about whether Mr. Sanchez was in a gang, had any gang associations, or anything of that nature. The only questions were about his tattoos. Right, but he says the record was before him. Right. So to respond to Your Honor's question about those specific things, the statements that Mr. Sanchez made during the interview could have only been about tattoos. The documents that were submitted were about the gang expert, pardon me, the tattoo experts saying that none of these tattoos indicate any connection to any gang. And the immigration record could have only showed that Mr. Sanchez was in this country unlawfully. Again, we are here on a 12B6 motion. The district court below accepted as true the factual pleadings. No Twombly-Iqbal issue was raised. And so if that's a question that the court wants, that should be addressed on remand. What do we do with statements in the Hines Declaration that say that we consulted other things as well, and that all of this has been reviewed by legal advisors of the State Department and the supervisor, so that we had information provided by law enforcement, immigration record, and other documents submitted? Those all come back to the tattoos, Your Honor. And if the court has to be But how do we know that those come back to the tattoos? For the reasons that we've pled in this complaint. But how do we possibly know that consulting with law enforcement, that the only thing that we know comes back to the tattoos? Well, respectfully, Your Honor, that's a factual question that can be addressed on remand. We have pled in the complaint that that all comes back to the tattoos. We think that the law enforcement report So why do we get to review that under Mandel? Is that not facially legitimate? Is that not a bona fide reason? It's not when we have sufficiently pled that the tattoos were the sole basis You've just opened up Mandel to, you've opened up Mandel with a can opener here. No, Your Honor. Courts have always applied Mandel to require limited judicial review. In cases like Cardenas, the court did take a peek. It's not a full look behind, but the court can look at the statute. Here we have statute that has extraordinarily broad language. Any other unlawful activity. It's got to be more than a mere suspicion. Our complaint has alleged with sufficient particularity that there were no issues with this application until the consular officer saw Mr. Sanchez's tattoos. And based on that and based on the attempts by the appellants here to attempt to overcome that at the time with experts regarding his tattoos, every indication here, Your Honor, is that these are about tattoos. And if there's not, that's appropriate for remand because it's a factual question. And that's exactly the type of review that's facially legitimate. If we sent this back to the district court, what would the district court get to inquire into? I think the district court would have to make a legal decision on two things. Number one, whether Mrs. Gutierrez has a First Amendment pathway to interest that is implicated by the visa denial sufficient to trigger the facially legitimate and bonafide test. And number two, the other main issue, merits issue, which the district court didn't address, whether, as we've alleged, a denial based purely on tattoos acquired in the United States without any other factual indication by someone who had substantial connections to this country, who left for an innocent purpose to try and strengthen those ties to his home community. That's what exactly what Mandela is for.  Counsel, you need to slow down just a little bit. I'm sorry, Your Honor. Okay. All right. I didn't understand the first point that you made. Let's just go to the second point because that seems to me to be the relevant problem. So if we send this back to the district court, what does the district court get to do? The district court, do you get to depose the consular officer? No, Your Honor. We do not. Okay. What do you get to do? At this point, on a 12B6 motion, the district court gets to make a decision about the legal argument that we've made, that we have pled, and the court, again, accepted as true the pleadings that we've made on the tattoos, that if tattoos are the sole basis, that that does not satisfy the facially legitimate. And that would cover any tattoo? No, Your Honor. The government, we do not argue, and let me make a couple of points to clarify this. We certainly do not argue that the government may never consider tattoos. We ask that the court do what courts have done with the Mandel test for a half century and take whether the facts in this particular case satisfy the government's burden of facially  Does the district court get to look at the tattoos? No. Well, the tattoos are on the record. There's no question of looking at- Does the district court get to make its own decision as to whether it thinks that the tattoos are gang-related? No. But what the district court gets to do is apply the facially legitimate and bonafide I don't understand what you want the district court to do, counsel. Well, we've raised a legal question, and let me try and help the court understand- Yeah, I still don't understand what the question is that the district court, that you'd like the district court to review. Let me try and say it to be more clear than I was before then. What we would like the district court to do on remand is, number one, make a decision on the government's new arguments that the tattoos were not the sole basis of the denial. Number two- How could the, what can the district court possibly do with that, counsel? Well, this is- It's going to, is it going to get Ms. Hines in there and then do a credibility? I don't think we need to, Your Honor, because the government has never denied that the tattoos were the basis for this denial. If you look at- Okay. So let's suppose that it is the tattoos. Now what? Then the facially legitimate and bonafide test is not-  And what is it that the district court gets to do with respect to the tattoos? You just told me, I think, that the district court doesn't get to look at the tattoos and make its own judgment. Correct, insofar as that relates to the threshold question of whether the facially legitimate and bonafide test has been met or not. But when the First Amendment-protected speech is the only reason for a visa denial, then, yes, we do get to go to the question of whether that was the sole basis for the denial. We've alleged that it is. Counsel, we're still talking around in circles. I don't understand whether you think the district court gets to, gets to talk to the consular officer or a supervisor or a legal advisor at the State Department and make a credibility finding, or whether the district court gets to look at the tattoos himself and decide whether or not he thinks that those are gang-related. As between those two options, I, I, I'm not sure that either one of those is supported by any of the cases, and I don't know what other argument you've got. Let me try and answer Your Honor's question briefly, and then I would like to make sure I have some time to rebut, but Your Honor, in this case, where the, the, the, at the threshold question, the court does not need to go behind the facts in the pleadings here. If the court's question is as to whether we pass the facially legitimate and bona fide test, then yes, the, the options for judicial review become more ample. Normally, that means ex parte review, in-camera review of, of documents and perhaps even looking at the, the law, law enforcement report. That's how cases have been treated in the past. Thank you, Your Honors. I hear from McGovern. Good morning, Your Honors. May it please the court, my name is Caroline McGuire, and I'm appearing on behalf of the United States. Appellants try to outflank Munoz by claiming that the First Amendment creates an entitlement to hear your spouse in your country of citizenship, despite the government's determination that appellant is inadmissible on national security related grounds. Appellant's alleged right to hear her non-citizen spouse does not include the right to have Mr. Sanchez enter and remain in the United States. The Supreme Court squarely held in the Department of State versus Munoz, that a United States citizen does not have a fundamental liberty interest in her non-citizen spouse being admitted to the country. And I'd like to begin addressing some of Judge Bybee's questions to my friend on the other side. Remand in this case would be wrong. All this case, all this court needs to do is affirm the district court. Remand would be incorrect because appellants are asking for remand to resolve a factual dispute. And that is plainly prohibited by the doctrine of consular non-reviewability. In addition, the government is not raising any new arguments about why Mr. Sanchez's visa was denied. As the district court had the record in front of it and had the Hines Declaration in front of it, Mr. Sanchez's visa application was denied because the consular officer reviewed all evidence available, including Mr. Sanchez's statements made during the visa interview, information provided by law enforcement, the immigration record, and all documents submitted. And to go back to some of Judge Bybee's questions, how do we know it's the tattoos? We don't, but put differently, the tattoos were never the sole basis for the denial and the government has never maintained as such. Because there is no constitutional right implicated, consular non-reviewability forecloses judicial review. It's also the government's position that Munoz answers the question as to whether Ms. Gutierrez has a First Amendment interest in her husband's visa denial. Recognizing a First Amendment interest to hear Mr. Sanchez's speech, not just to hear the speech, but to have him enter and remain in the United States in order to hear the speech, would turn consular non-reviewability on its head and convert consular non-reviewability to reviewability. And that is because there really is no limit as to where this could go. Anyone could make a First Amendment challenge and say, my loved one's visa was denied, and therefore their ability, my inability to hear their speech in the United States is infringed upon, and no court has ever went that far with the doctrine. So how do you read Mandel? So do you just limit it to the facts of the case where it's kind of core First Amendment political speech, or how do you reconcile exactly Mandel and Munoz? So Munoz says that there is no constitutional, a United States citizen does not have a constitutional right to have their non-citizen spouse admitted into the country. Mandel says the court can examine whether there's a facially legitimate and bona fide reason if a constitutional right is implicated. There cannot be a constitutional right implicated because appellants couple a First Amendment right with another right to have their spouse admitted into this country, and so the inquiry stops at Munoz. I don't think we get to Mandel to examine whether the reason was facially legitimate and bona fide, although the district court did decide as such, and this court could also affirm on those grounds. So if the husband was a political figure and wanted to come into the country to make political speeches, would you say that the wife wouldn't have a First Amendment right that was burdened if he was prevented from coming in? Two points to that, Judge Okuda. That is not this case, but if it were that case, I think we would have to look at the visa denial grounds and then determine whether the denial was facially legitimate and bona fide. If we accept it as true, that a First Amendment right was implicated. And here I think it's important to note that the 3A2 visa denial grounds is one based on national security, which is routinely instructed to the political branches. Like in Munoz, who invoked a fundamental right to marriage, Mrs. Gutierrez actually claims something more distinct, and that is a right to reside with her non-citizen spouse in the United States. That claims more than marriage and more than cohabitation. It includes the right to have her non-citizen husband enter and remain in the United States. An appellant's briefing and prayer for relief are telling that this is their desired results. We can look to the Munoz decision at footnote two, where Justice Barrett noted that if either internal review or reconsideration is no longer available under state department regulations, and that regulation is 22 CFR 42.81. This specific denial received all consideration that could be afforded under that regulation. Appellants presumably seek what they sought below, and that is judicial review of the inadmissibility finding. And a court order requiring the State Department to reconsider Mr. Sanchez's visa application. The logic of appellant's position suggests an entitlement to bring Mr. Sanchez to the United States. According to appellants, this First Amendment right would only be satisfied if Mrs. Gutierrez was able to hear her husband's speech in person. And as Justice Scalia noted in Dinn, those two individuals can hear each other speak in any country in which they are permitted to reside, they just cannot do so in the United States per the inadmissibility finding. Can you address, there's language in Mandel, because I think the government in Mandel said, well, even if he doesn't come here to debate, he can do it by telephone. It says technology is advancing, and the court rejected that, saying there's value in face-to-face debate. Does that apply here at all, assuming they have a valid First Amendment interest here? There is value to face-to-face debate for sure, but how the government would distinguish Mandel is that case was decided in 1972 before major technological advancements like FaceTime and Zoom developed. And so I think another important point there is Dr. Mandel was applying for a non-immigrant visa. He was applying for temporary admission to this country for about six days. And the visa application at issue here is entirely distinguishable because it's an immigrant visa for permanent residence. And so I think the court should take into consideration technological advancements, but also the difference in visa application. And as Judge Lee stated in the Munoz dissent from this court, appellant's complaint was not about whether they knew the visa refusal was about gang membership. And that was evidence because they submitted a declaration to disclaim that. And that declaration showed that their quibble was not for lack of knowledge, but that the government did not provide evidence for the government's belief that Asencio Cordero was an MS-13 gang member, and the same is true here. The visa refusal on the 382 grounds, the same grounds that were at issue in Munoz, indicates that Mr. Sanchez is a member of a known criminal organization. And after that visa refusal, appellant submitted an affidavit from an expert in gang culture and tattoos. And that's in the record at 31, specifically at paragraphs 30 to 31 of the complaint. So based on that, it seems like appellants know the refusal is based on Mr. Sanchez's gang ties. And like Judge Lee noted in Munoz, appellant's quarrel here is a factual one. And remand to solve that factual debate would be inappropriate under the consular non-reviewability doctrine. The government would also like to address appellant's substantial connections arguments. The substantial connections test has been applied to determine whether a litigant can raise a constitutional claim. It is not applicable here because the Supreme Court has already decided that an unadmitted non-citizen has no legal right to entry in this country, and so therefore they have no constitutional cause of action. There is no reason to deploy the test to see whether Mr. Sanchez can raise the claim, because it is foreclosed, the claim is already foreclosed by Supreme Court doctrine. No court has ever measured substantial connections in the face of a visa denial challenge. And there's no reason for this court to do so here, because Mrs. Gutierrez is a party to the case. If the court has no further questions, the government respectfully requests that this court affirm the district court's finding. Yeah, thank you. You have two minutes for rebuttal. Thank you, your honors. If I could make two basic points here. Number one, these appellants do not insist and have never asked that Mr. Sanchez has a right to entry. We simply argue that both of these appellants have a First Amendment interest implicated by the denial sufficient to get to the test. We're not asking the court to grant a visa. There is no entitlement to bring Mr. Sanchez to the United States. I'm glad opposing counsel raised the substantial connections test because we've focused so far on Mrs. Gutierrez's rights. But Mr. Sanchez lived in this country for 24 years. The one point that opposing counsel didn't raise is that Mr. Sanchez is a resident of this country. He made voluntary connections to this country. He has US citizen children. He's got a wife. He coaches soccer. He goes to church. The Constitution isn't written in watercolor. It doesn't wash away when he leaves the country. And I'd like to conclude with a policy, especially not at a US embassy, which is de facto US territory under the Bermudian test. I'd like to conclude by raising one policy point, Your Honors. Thousands of people go through the consular process in an attempt to follow the path that Congress has laid out to legalize their status. In this case, Mr. Sanchez came here as a child. He was 15 years old. He wasn't an adult. He's following the path that Congress set out. If the court wants to set some sort of rule to make sure that the almost 50% of people, young people in this country who have tattoos are not afraid of following the path that Congress laid out, it should order remand in this case. Thank you, Your Honors. Thank you. We thank both sides for their argument. The case of Sanchez-Gonzalez v. United States is submitted.
judges: BYBEE, IKUTA, LEE